You may begin whenever you're ready. Thank you, Your Honor. Good morning. May it please the Court. Diana Monser, DLA Piper, on behalf of Amicus Assista, on the issue of jurisdiction. I would like to reserve eight minutes for Petitioner's opening and rebuttal statements. I understand that I have to monitor my own time. Thank you. Yes. Could you speak into the microphone? And while you're repositioning, I just want to ask you, from the outset, a question. Why isn't this just an easy question about jurisdiction? The argument is that the BIA applied the wrong legal standard. And that's a straight-up, ordinary question of law. And we have a whole lot of cases that say, under 1252a2d, we have jurisdiction over questions of law. Why isn't this just a straight-up, simple issue, the jurisdictional piece? Your Honor, I think that Amicus would argue that it is a fairly simple jurisdictional issue. We believe that you have jurisdiction under both Real ID and under ARIA to review it. But why do we need to reach that? If we already have we have a whole lot of cases that say questions of law, such as the standard of review of an immigration judge's decision as a question of law, we have jurisdiction over questions of law, and we move right on. So why would we have to do more than that in this case? Well, I think in this case, Your Honor, that I don't believe that the Court has presently reached whether extreme hardship is a reviewable determination, and it's our position that it's a mixed question. Except that the specific argument that has been made to us is that the BIA made an error of law by not applying the regulation. At least that's how it's presented in the brief. So that doesn't seem like a mixed question. The claim is that there's an error of law. I believe, Your Honor, that as you'll see in Hernandez, with the similar facts with extreme cruelty, where there is no discretion listed in the statute and there are regulations under the CFR with listing nonexclusive factors on how to determine extreme cruelty, similar things are true here with extreme hardship. There is no discretion given explicitly in the statute. It's not an inherently discretionary. I'm sorry. You should hear me. I think we're talking past each other. The specific argument that's being made by the Petitioner in this case is that the BIA made two mistakes of law. We always have jurisdiction over mistakes of law that are raised in the immigration context, regardless of whether it's extreme hardship or extreme cruelty or a straightforward asylum claim, whatever it is. If it's a question of law, we have jurisdiction. Why do we have to go beyond that obvious proposition? I guess I'm not understanding your point. Well, so let me see. So for example, one of your arguments as to why relief should be granted here is that on the appeal, the agency's appeal to the BIA, the BIA reversed the IJ's ruling, correct? Yes, Your Honor. Okay. One of the arguments is in doing so, the BIA made improper factual findings. Yes. Right? Its role as an appellate body is simply, when it comes to factual determinations, is to look to see whether the facts that the ALJ found were clearly erroneous, right? That is the standard. And there's a regulation that sets out what the BIA is supposed to act as an appellate body, right? Yes, Your Honor. And we have a series of cases that says that when the BIA goes beyond that and makes factual findings, they violated the law, as Judge Baber said. That's a legal argument, right? Yes, Your Honor. And we have jurisdiction over that, right? Yes, Your Honor. Now, you have a – looks to me, and I only speak for myself, but it looks to me like you have a pretty good argument that the BIA exceeded its role as an appellate body, all right? I think amicus would agree, Your Honor. So let me ask you this. If we were to agree with you, why wouldn't that just be a basis to grant you relief and to remand and to tell the BIA that you can't – if you – what you did is improper. If there needs to be further fact-finding, then this should go back to the IJ, for the IJ to do fact-finding. That's the role of the IJ. Yes, Your Honor. You know, you're making a really good argument. It appears that Your Honors are already well-versed in everything that I'm going to say, so I'm not sure I have much to add. Okay. I mean, that's one of the claims, and Judge Graber referred to another one. And the other claim is that in doing the VAWA claim, when it came to hardship, they didn't apply the correct regulation. They didn't apply the standards in the regulation, and that's just not following the regulation. That's an Arab law. Yes. Right? Yes. That's a little more difficult because they do cite the regulation in their decision. Well, but if they do cite the regulation, but they're also citing to – if you look at Respondent's brief, they're citing to – they're citing to cases which look at extreme hardship in a different statute, which look at it specifically as a – where Congress has given discretion directly in the statute to the IJ and the BIA and the not listed as something that the AG – that the AG receives exclusive jurisdiction to – pardon me, exclusive discretion to consider. And as well, the fact that there are factors in the CFR listed for extreme hardship suggests that it's not just – that it is the type of mixed question that Judge Graber was pointing to as a question of law. Yeah. That begins to become a harder question for us. Yeah. And you can kind of smell our trying to avoid the hard questions and answer the easy questions, because we've got a whole range of contexts in which we are asked to review hardship determinations, and some of them, for sure, we don't have jurisdiction over, and maybe we do and maybe we don't on this one, and that's a hard question. The easy questions are, did they engage in impermissible fact-finding? That's a question of law. We have jurisdiction over that. Did they sort of apply the wrong, articulate the wrong standard for hardship? That's a question of law. We get to decide that. And on those two bases, as we – bases, we clearly do have jurisdiction. The other one as to whether or not we disagree with their determination of hardship, that one's hard. And it may not even be properly before us if we were to conclude that they've engaged in improper fact-finding, that is to say, because that's a premise for what they did as to hardship. I believe that point we better address by petition. Okay. Why don't you yield your time, then? Thank you, Your Honors. Thank you, Your Honors. May it please the Court. I'm Attorney Andrew Knapp. I'm here representing the Petitioner, Vasco Rosello, who's sitting right here in the front to play upon your sympathies. I think that the reason I need the big guns of amicus here is because the government is arguing that in the context of what the government characterizes as an inherently discretionary determination, that the Board can permissibly take the facts from the record and then apply its discretion in disagreeing with the immigration judge's ultimate conclusion. I'm not sure we can get to your ultimate question. I'm going to sort of repeat, I think, a question that's already been asked of your amicus, which is, if we were to agree with you that the BIA engaged in improper fact-finding, wouldn't we simply have to remand the case at that point and let them do whatever they do, either send it to the IJ if they think there's further factual development or apply the appropriate standard of review or whatever? But it seems to me that we would get off the train at that point. I agree with you completely, Your Honor. The only concern that I have is in a recent decision on which Judge Fletcher sat, Paris Palafox, even though it would seem to the layperson that the Board and the immigration judge disagreed on the finding as to whether or not the Petitioner in that case was guilty, the panel found it permissible for the Board to take the facts as stated by the immigration judge, but come to a completely separate conclusion. And the other concern was the fact that the Board did not do, say, here are the facts as found by the IJ, and we have a different legal analysis as to what that demonstrates. That's not what happened here. Right. Well, that's what the government is asserting, but I don't think that's what the IJ is asserting. I agree that the central question presented here is whether or not the BIA, in overturning the immigration judge's grant of VAWA cancellation, failed to apply a clear error standard of review and engaged in its own impermissible fact-finding. The controlling regulation in ACFR 1003.1D – 1003.1D31 explicitly states that the BIA shall not engage in de novo review of the findings of an immigration judge. The subsequent subsection states that facts determined by the immigration judge shall be reviewed only to determine whether the findings are clearly erroneous. And furthermore, ACFR 1001.3D4 states that the BIA shall not engage in fact-finding in the course of adjudicating appeals. So put more simply, as this Court recently held in Rador v. Holder, the BIA, under a clear error standard of review, may not simply override or disregard the findings of an immigration judge and substitute its own version of reality. And that's what I believe happened in this case. The immigration judge found that Petitioner had met his standard of review in establishing extreme hardship to himself. The immigration judge specifically stated that Petitioner is not up to date in his field and is unable to obtain employment in that area. But instead, the BIA, without explaining why that factual finding was clearly erroneous, substituted its own analysis that because of Petitioner's high level of education, his entrepreneurial work experience, and his potential for increasing both his level of education and earning capacities, that the hardship couldn't be described as extreme. But the Board doesn't get to do that. It can only — it can't cherry-pick the facts from the record. As this Court said in Lopez Rodriguez, the fact that there is evidence in the record that's not addressed by the immigration judge doesn't give the Board license to reach beyond the findings actually made by the immigration judge and instead pull out the facts that would have resulted in the Board coming to a different conclusion, or the Board to be the finder of fact in the first instance. But that's not something that the Board gets to do. In addition, the reason I wanted to make sure that this Court understood that it retained jurisdiction is most of the prior case law on this has to do with impermissible fact-finding on appeal or impermissible de novo review in the context of asylum and cat claims, which are not under the statute classified as purely discretionary determinations. And the one exception is in Rador, the panel did review as well the denial of discretionary relief with cancellation of removal. But I think what the government is going to come up here and argue is that the Board, because even though this, in this context, it's a question of first impression, because this Court in a similar context has found that the hardship determination is essentially subjective and discretionary, that that means that under the regulations the Board is within its right to reweigh the evidence. But that's a misunderstanding of the preamble to the regulations. The regulations specifically talk about the fact that facts that a Respondent's claim makes up exceptional, extremely unusual hardship will be reviewed by the Board only to determine if the immigration judge's determination was clearly erroneous. What the statements regarding weighing in the preamble go to is whether or not, after accepting the facts as found by the immigration judge, whether the Board is entitled to give different weight in the ultimate discretionary decision. Kagan. Kagan. Counsel, you have about a minute and a half. Did you want to reserve any rebuttal time? Yes, thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Rob Stolzer on behalf of the Attorney General. Your Honors, I would like to start with jurisdiction very briefly, because I know that's not your main focus in terms of Amicus' argument, and that is that it would be a vast departure for this Court to decide that it has jurisdiction over extreme hardship determinations as a de novo matter. But you would agree that the legal question, whether the BIA followed its own regulation on fact-finding or didn't, is a question of law? Yes, Your Honor. And that we have jurisdiction over that question in the ordinary course of things. Yes. And I understand that to be Petitioner's argument rather than Amicus' argument. I think we're here confronted with a decision, Your Honors, as to what the Board did. The Petitioner has argued that the Board was engaged in a factual determination. Amicus has kind of suggested that they were engaged in a legal determination and that both of those would be reviewable here, one because of legal error and the other because of legal determination. What the Board actually did, Your Honors, was apply a discretionary determination. It used its discretion and judgment to determine that Petitioner did not demonstrate the extreme hardship required here to qualify for review. Except that the Board did some, clearly did some fact-finding, at least, with respect to the situation of his parents. I mean, after saying that the immigration judge declined to make any findings, then it said, well, we're going to just tell you what we think of the evidence and make some findings about his parents and what's going on with them. And maybe they're supportable, but that still may not be at all what is allowed under the regulation. I think the Board is allowed to at least weigh the evidence that was mustered below in order to review it, right? Because we know that the Board is allowed to make that ultimate discretionary determination. Let me just read a sentence that Judge Graber is looking at or referring to. However, his parents do not appear to be dependent on him financially. They're not just weighing the evidence. They're looking at the evidence. They're doing the – they're acting like the I.J. right there. Well, I disagree, Your Honor. I think they are weighing the evidence to determine any alternative, because that was the alternative argument, right? The first question was whether, as a matter of discretion, he had demonstrated extreme hardship to himself. And the Board is simply looking at the alternative, which is an argument that he didn't raise. He said, well, what about the parents? He's saying, well, again, the evidence that was mustered below just doesn't reach that level. Well, here's another example with regard to him. He has other transferable job skills. That's actually not a finding that the I.J. made. And the implication of the I.J.'s findings would be to the contrary. And so it seems on both halves of the equation, his situation and that of his parents, the BIA is going quite a bit beyond simply weighing or looking at the – or taking as a given the I.J.'s findings. I mean, suppose you have an I.J. who says, this person has chronic hangnails and is – you know, loves dogs, and therefore I'm going to grant relief. Well, you can take those facts as a given and come to a different conclusion. But here you have, it seems to me, new facts or new findings. I disagree. Particularly with regard to that paragraph that you just pointed out, the transferable job skills, the immigration judge did mention his other facilities in her decision. Talked about his history, what he'd been up to, what he was capable of. Those were all facts made in the immigration judge's decision. Now, she decided the other direction. But it was still within the Board's jurisdiction to examine them and weigh them again and find otherwise. I would note, Your Honors, with respect to the sentence of the decision that Petitioner's counsel discussed, the Board did not engage in impermissible fact-finding when it suggested that the Respondent provided no evidence that he inquired into job opportunities overseas for someone with his current qualifications. That's not a contradiction. In fact, they took the – the Board – excuse me, they took what the immigration judge told them at their word, based on her finding of extreme hardship on a determination that Respondent's technology experience is now outdated. They didn't disagree with that. But, counsel, the test isn't whether it's contradictory. If the Board does not allow to make fact findings, even supplemental fact findings seem to me to be contrary to the regulation. For example, let's say the immigration judge simply declined to make any findings at all about job skills. Just said, well, I don't think that's relevant. I'm not going to make any findings about that. And the BIA thinks, well, that's really silly because that's really important. So the Board can't make those findings. It can certainly make a finding that the evidence was lacking. Right? It can say, well, this is – this immigration relief should not have been granted because the evidence was lacking. And, in fact, Your Honor, that's what the immigration – excuse me, the Board did hear it. If you turn your direction to the final paragraph of the decision, they say, thus, there is insufficient evidence to support Petitioner's claim that either he or his parents would experience. That's exactly what they were saying. They were saying you didn't muster the evidence necessary for us to conclude in our exercise of judgment that you qualify for this relief. And that was firmly within the Board's authority to do under the standards of review. Again, because they're not contradicting the immigration judge. They're simply saying, look, you haven't mustered enough evidence for us to conclude in your favor. And that's consistent, I should say, with this Court's prior precedent. So let me ask you this. So where does the standard of clearly erroneous fit in in that scheme? If, for example, to take Judge Graber's example of the man with hangnails, if perhaps there had been medical evidence in the record that said the man didn't have hangnails, well, then the Board can come back and say, well, actually, we believe that fact-finding is clearly erroneous based on the record before us. Again, it's not as a sufficiency of evidence question in that case, because there would be evidence below to show that the immigration judge's determination, factual determination, was clearly erroneous. Because I think, actually — So your argument is, is that even — well, let me put it this way. So, you know, as a trial judge, you know, and I know this isn't, you know, formal court, but a lot of evidence comes in, and then you have to make a decision and usually the judge will make findings that he believes, he or she believes will support that decision, right? Sure. Now, I guess what you're saying is, well, the BIA can look at all the other evidence. Is that your question, Your Honor? Absolutely. Can look at all the other evidence and sort of disregard what the — without using a clearly erroneous review, and say, well, look at all this other evidence here, and we don't think, when you look at all this other evidence, we just — we just disagree with the — in our discretion, we just disagree — we're just exercising our discretion and we just disagree with the judgment. It may not disregard the fact-finding, but it can certainly come to a different conclusion about it. And the Attorney General, in the preamble to the Regulations and Standards Review, expressed that clearly, saying that the discretion or judgment exercised based on findings of fact, and the weight accorded to those facts, may be reviewed by the Board de novo, meaning they can start fresh there and determine if the applicant in its exercise of discretion has qualified for the relief at hand. And as I was saying a minute ago, this is consistent with this Court's prior holdings. Well, you know, the BIA, before they changed the rules, I don't know, 10 years ago, whatever it was, you know, the BIA had authority to make its own findings. They could do whatever they wanted to do. Yes, Your Honor. And they — I thought the change was designed to make the BIA more like an appellate body. It was. It was, Your Honor. I think maybe we should note that the Board is entirely a creature of the Attorney General, right? The Board isn't created by the statute. Its powers and authorities aren't delimited by the statute. But it's set by a set of regulations, correct? Indeed. And it has to comply with the regulations, correct? It must. And if we have a question as to what those regulations mean, the place we should start is what the Attorney General said they meant, because they are his delegation of authority. If he thought that he was delegating the Board the authority to do this, then we should give that great deference, because, of course, it's his authority to start with. Well, that doesn't — we don't find that out by reading the BIA's opinion in this case, because that's not the Attorney General's interpretation. It's just the application in this case. And the regulation says it's the IJ that finds the facts. And if we were to conclude, contrary to your argument, that the BIA in this instance did go ahead and find facts that don't meet the standard of the regulation, would you agree — I know you don't agree with the premise, but if we were to conclude that, would you agree that we have to remand it? Yes, Your Honor, I believe we would, if that were true. With very quickly respect to the other error that was alleged here, which was that the regulations for extreme hardship were not applied correctly, I would just point out that the Board did point to the correct regulations, it did discuss them, and that is as much as it needed to do in order to demonstrate that it was exercising its discretion and judgment correctly, or at least within its authority to do so, and that simply disagreeing with their weighing of the factors is not the place of the Court here. We know that because of the standard of the — excuse me, the congressional limitation on jurisdiction, that when they exercise their judgment in that manner, it can't be reviewed. Are there any other questions? I don't believe there are. Thank you very much. Petitioner has about a minute and a half remaining. Your Honors, I just want to make a few brief points. To begin with, the government is claiming that if it's in the record, then the Board can rely on it, but it's not enough that there's facts in the record. These have to be facts that were addressed by the immigration judge. If the immigration judge ignored facts that the Board thinks are important, then it has to be remanded for the immigration judge to make the factual findings in the first instance. And also, I don't think it's enough for the government to say that you need to defer to the BIA's interpretation of its own regulations, because the case law that the BIA has come down with has been implicitly rejected by this Court in the prior decisions on finding that this is a cognizable legal error, and the Board itself has said contradictory things, so the deference to give to, you know, their decisions that have been struck down by the circuits in which they arose should be limited by the Board's inconsistency in how it applies to those regulations. And then I also wanted to point out that this case is on all fours with the Eighth Circuit's recent case in Walter, and it also involved an individual from Europe who was found to have established extreme hardship based on a finding that he would not be able to obtain employment in his field. And there the Board again impermissibly found on appeal in stating that Mr. Waldron had transferable job skills. And if you were to hold any different in this case, that would create a circuit split with the Waldron decision in the Eighth Circuit. And with that, I would ask that the Court grant my client's petition. Thank you, counsel. The case just argued is submitted, and we appreciate the excellent, helpful arguments from both counsel.
judges: Graber, Fletcher, Paez